**PITTSTON STEVEDORING CORPORA-TION and Michigan Mutual Liability Company, Plaintiff-Appellants**

v.

**Thomas F. HUGHES, Deputy Commissioner of The United States Employees Compensation Commission, Defendant-Appellee.**

**NESSA CORPORATION, Employer and Liberty Mutual Insurance Company, Insurance Carrier, Plaintiffs-Appellants,**

v.

**Thomas F. HUGHES, As Deputy Commissioner for the Second Compensation District of the United States Department of Labor, Defendant-Appellee.**

Civ. Nos. 61C190, 61C177.

United States District Court
E. D. New York.

Oct. 23, 1961.

Joseph P. Hoey, U. S. Atty., Brooklyn, N. Y., by Philip Silverman, Asst. U. S. Atty., New York City, for Thomas F. Hughes, Deputy Commissioner.

Anne G. Kafka, New York City, for plaintiffs in Pittston action.

Albert P. Thill, Brooklyn, N. Y., for plaintiffs in Nessa action.

RAYFIEL, District Judge.

The plaintiff in each of the above-entitled actions has moved under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., to review and set aside a compensation order of Deputy Commissioner Thomas F. Hughes, dated February 14, 1961.

The facts, which are not disputed, follow:

On January 18, 1952, one Angelo Pinto, hereinafter called the claimant, while employed as a longshoreman by Nessa Corporation aboard the M/S "Bowplate", was struck by a cargo net, causing him to sustain an injury to his back. Later that day, while engaged in his employment, he sustained a low back sprain. He was given medical treatment.

Thereafter, in a compensation order dated April 4, 1956, it was found that he was *wholly* disabled from January 30, 1952 to February 26, 1952, after which he returned to work of a restricted nature, and that he was *partially* disabled from February 27, 1952 to June 14, 1953.

On June 13, 1953 the claimant was working as a longshoreman for the Pittston Stevedoring Company, discharging cargo from the SS "Imperial". While lifting and moving the cargo he sustained a severe sacro-iliac strain, herniation of the discs between the 3rd and 4th, and 4th and 5th lumbar vertebrae, and arachnoid adhesions. Pittston furnished him with medical treatment. The compensation order of April 4, 1957 found that as a result of this accident he was *wholly* disabled from June 15, 1953 to November 25, 1954 and permanently *partially* disabled from November 26, 1954 to April 4, 1957.

In the aforementioned compensation order of that date Deputy Commissioner John A. Willard made an award, in which he ordered Nessa and its insurance carrier, Liberty Mutual Insurance Company, to pay the claimant compensation as follows: four weeks from January 30, 1952 to February 26, 1952 for temporary total disability; 60⅞ weeks, from February 27, 1952 to June 14, 1953 for temporary partial disability, and 123 weeks, from November 26, 1954 to April 4, 1957, for permanent partial disability. The employer and its insurance carrier were directed, until otherwise ordered, to continue payments to the claimant for permanent partial disability.

Under the same order Pittston Stevedoring Corporation and its insurance carrier, Michigan Mutual Liability Company, were directed to pay the claimant compensation as follows: 75⅞ weeks, from June 15, 1953 to November 25, 1954 for temporary total disability; 123 weeks, from November 26, 1954 to April 4, 1957, for permanent partial disability. They were further directed, until otherwise ordered, to continue to make bi-weekly payments to the claimant for permanent partial disability.

Each of the insurance carriers, on behalf of its insured employer, continued to make bi-weekly payments pursuant to the award until each had paid to the claimant the sum of $10,000, the limit provided in Section 914, Subd. (m), of Title 33, U.S.C.A. at the time of the accidents for permanent partial disability. They suspended further payments to the claimant on the ground that the maximum statutory compensation had been paid for the claimant's temporary total and permanent partial disability.

The claimant then made application pursuant to Section 922 of said Title for a reconsideration of his case. In his application he claimed that he was permanently and totally disabled due to a change in his physical condition which occurred since the hearing of April 4, 1957.

A hearing was held before Hon. Thomas F. Hughes, Deputy Commissioner, on April 6, 1960. The claimant testified respecting his condition, as did various doctors who had examined him.

Thereafter, on February 14, 1961, Deputy Commissioner Hughes made a compensation order and award modifying the order and award of April 4, 1957. In this new order he found as a fact that "as a result of the *combined effects of the injuries of January 18, 1952 and June 12, 1953*" the claimant was "from March 3, 1960, permanently and totally disabled from engaging in gainful employment". (Emphasis mine.) He held the employer Nessa Corporation and its insurance carrier, and the employer Pittston Stevedoring Corporation and its insurance carrier, *jointly* liable for permanent total disability from March 3, 1960, and directed each employer, or carrier, to pay the claimant 50% of the maximum weekly compensation from that date, and "during the continuance of the claimant's permanent total disability, or until otherwise ordered * * *."

The plaintiffs herein contend that Deputy Commissioner Hughes erred in making this award. They concede that the claimant is *totally and permanently* disabled, but, they say, his disability is the combined result of *both* accidents, each of which resulted in only permanent *partial* disability. They contend that by reason of that fact the claimant's compensation should be paid out of the Special Fund established under Section 908(f) of said Title, which reads as follows: "Injury increasing disability: (1) If an employee receive an injury which of itself would only cause permanent partial disability but which, combined with a previous disability, does in fact cause permanent total disability, the employer shall provide compensation only for the disability caused by the subsequent injury: *Provided, however,* That in addition to compensation for such permanent partial disability, and after the cessation of the payments for the prescribed period of weeks, the employee shall be paid the remainder of the compensation that would be due for permanent total disability. Such additional compensation shall be paid out

of the special fund established in section 944 of this title."

I agree with the plaintiffs' contention. Section 908(f), supra, precisely covers the situation in the cases at bar. The Deputy Commissioner found as a fact that the first injury and the second injury, each standing alone, caused permanent *partial* disability, but that when the second injury was combined with the first injury the claimant became permanently *totally* disabled, a finding based, in part at least, on the following testimony of Dr. Shenkman at page 58 of the record of the hearing before Deputy Commissioner Hughes on April 6, 1960:

"By Mr. Ruckersfeldt: Q. I believe that you said, Doctor, in answer to Mr. Johnson's question, I just want to be clear on this now, that the disability is not from either one of the accidents but from a combination of both, is that correct? A. Yes."

The case of Vandever v. Voris, D.C., 147 F.Supp. 447, is almost parallel with the cases at bar. There, the claimant, a longshoreman, had suffered an injury to his spine in 1939 for which he had been awarded a 60% permanent *partial* disability; thereafter, in 1948, while working for another employer, he received another injury to his spine for which he was awarded a 40% permanent *partial* disability. Subsequently, the claimant was found to be *totally* permanently disabled for work as a result of the *combined* effects of both injuries. In passing on the questions there presented Judge Allred, at page 450, stated: "The present Deputy Commissioner and the Bureau contend that section 8(f) does not apply to *general injuries* but that it and the special fund section deal only with *injuries to specific members of the body*, such as the loss, or loss of use, of an eye, arm, leg, etc. Since these contentions present pure law questions and the present Deputy Commissioner would reverse his predecessor and adopt the second construction, from which the insurance carrier would appeal, nothing would be gained by remand, delay only would result. The motion to remand, therefore, is overruled.

"Vandever is totally and permanently disabled, for which he is entitled to be paid additional compensation either by the employer or out of the Special Fund. Lawson v. Suwanee Fruit & S. S. Co., 336 U.S. 198, 69 S.Ct. 503, 93 L.Ed. 611, involved a worker who previously had lost the sight of one eye in a non-compensable accident and later lost the second eye through an injury sustained in the course of his employment. The court held that the employer was liable under section 8 (f) only for loss of the second eye and the remainder of the compensation for total permanent disability was payable out of the Special Fund. That case points out that the federal statute is based upon the New York law and that section 8(f) is designed to encourage employment of handicapped workers. Although the only illustrations of such handicapped workers in the case are the one-eyed, one-legged, one-armed, etc., workers, the same argument could be made as to discrimination against workers handicapped by a previous injury, such as an injured back.

"On its face, section 8(f) would seem to cover the facts found here by the Deputy Commissioner, i. e., Vandever received an injury, which of itself only caused 40% partial permanent incapacity but which, combined with the previous 60% injury, in fact caused permanent total disability. No case has been cited holding that 8(f) is limited to disability resulting from loss, or loss of use, of specific members.

"Counsel for the Deputy Commissioner likens the situation to the many cases where a pre-existing or quiescent disease or congenital condition is aggravated by an injury. But there is no finding that Vandever's previous disability had been overcome or was quiescent. The Bureau's regulation quoted above states that awards will not be made from the special fund in cases in which an injury increases or aggravates disability due to disease, congenital defects or *causes other than a prior injury*. This indicates a prior construction that awards *would* be made from the fund where an injury aggravates disability caused by a prior in-

## 660

jury of any kind. There is nothing in section 8(f) to indicate that it is limited to specific injuries. The previous construction placed on it by the Bureau is entitled to weight here."

I agree with Judge Allred's reasoning, and I find that Deputy Commissioner Hughes erred in his order of February 14, 1961, wherein he directed that both employers herein and their insurance carriers were jointly liable for the claimant's permanent total disability. The award to the claimant should be made against the special fund, as provided for under Section 908(f), supra.

Both plaintiffs' motions for summary judgment are therefore granted.

Settle order on notice.